The Honorable Joe Yates State Senator 1812 Clark Bentonville, Arkansas 72712-6829
Dear Senator Yates:
This is in response to your request for an opinion on the authority of the Bentonville City Council to pass six separate ordinances and resolutions. You have listed and attached each of the measures in question, and ask my opinion as to whether these measures, which effectively curtail the authority of the Mayor, are within the Council's authority and consistent with Arkansas law. Each measure will be described below and analyzed in the order in which your request presents them.
The first measure is Ordinance No. 93-034 which amends the "personnel policy" of the City to provide that no job transfer or promotion, written reprimand, suspension with or without pay, termination or demotion shall be effective without the approval of a majority of the city council. Assuming there is nothing in the City's charter inconsistent with this ordinance, it is my opinion that the City Council is within its authority, with one exception. I have not been provided with the entire "personnel policy" of the City, and am thus unsure as to whether the policy applies to "department heads" and/or the chief of police or of the fire department. Although this office has previously opined that the mayor does not necessarily have the sole authority to hire and fire city employees, and that the question will turn upon the city charter and ordinances (Op. Att'y Gen. 93-268, copy enclosed), this opinion specifically distinguished the appointment and removal of municipal officers and department heads. Section 14-42-110 (1987) gives the mayor the specific authority to appoint and remove department heads, unless this action is overridden by a two-thirds vote of the council. In addition, A.C.A. § 14-43-504 gives the mayor the power to appoint and suspend the chiefs of the police and fire departments (absent civil service). It is therefore my opinion that the Bentonville City Council has the authority to enact Ordinance 93-034, absent any contrary requirements of the City charter, and as long as the ordinance does not apply to department heads or the officers mentioned above.
The second measure noted in your request is Ordinance No. 93-036, which provides that no purchase or expenditure exceeding five thousand dollars may be made by any officer of the City without specific prior approval of the City Council. The Ordinance also provides that no purchase or expenditure may be made which is not contained within a specific line item in the City budget, and which does not include the signature of the "Comptroller"[1] of the City on any supporting documentation.
With regard to this question, although A.C.A. § 14-43-502 (1987) provides that the council shall "have the management and control of finances," A.C.A § 14-58-303 (1987) states that the "mayor or his duly authorized representative shall have exclusive power
and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things. . . ." This same statute states that the city council shall provide, by ordinance, the procedure for making purchases which do not exceed five thousand dollars. The statute also provides, with regard to purchases which exceed five thousand dollars, for the mayor to invite competitive bidding thereon. It does not appear, in light of these statues, that the city council has the authority to require prior council approval of "purchases" made by the mayor. The relevant statute gives the mayor the "exclusive authority" to make purchases on behalf of a city. Although the mayor is required to solicit bids on purchases exceeding five thousand dollars, it does not appear that the council has any authority over these purchases, as long as the purchase is from previously appropriated funds. The council does have the authority to establish the procedure for making purchases under five thousand dollars. This procedure, in my opinion, however, cannot obliterate the mayor's statutory authority to make purchases.
The issue becomes somewhat unclear, however, in light of the Council's removal of the mayor as signatory on City checks.[2] If the mayor has the authority to make purchases but not to sign checks to pay for them, it is unclear to what extent the city council or other city officers are obligated to provide funds for the purchase. The issue is complicated further by A.C.A. § 14-58-305 (1987), which gives the mayor the authority to approve payment of bills, debts, or liabilities asserted as "claims" against the municipality. Subsection (b) of this statute states that the governing body shall, by ordinance, establish a maximum amount, and the payment of such claims exceeding that amount shall require the confirmation of the governing body. The council can require prior council approval of the payment of any "claim" exceeding this amount. It is unclear, however, how this statute relates to "purchases" made by the mayor.
It is my opinion, therefore, that this issue can only be definitely resolved by a court faced with all the facts surrounding a particular purchase. The state statutes on the question simply do not afford a definitive answer.
With regard to this Ordinance's requirement of a specific line-item appropriation, I have found no statute which governs this question. Municipal budgets in mayor-council cities are governed generally by A.C.A. §§ 14-58-201 to -203. This subchapter does not specifically discuss "line-items" of the budget. It is my opinion that there is no prohibition against the city including specific line-items in the city budget. (Cf.Local No. 34, International Association of Firefighters v. Cityof Little Rock, 256 Ark. 266, 5-6 S.W.2d 836 (1974). If a particular budget has previously been approved, however, and general funds thereby appropriated for general purposes, it is my opinion that the City Council cannot prevent the expenditure of these funds by an ordinance such as No. 93-036. To achieve this result, that portion of the budget appropriating funds for general purposes should be amended in accordance with A.C.A. §14-58-203.
With regard to Ordinance 93-036's requirement of the Comptroller's signature on supporting documentation of any purchase or expenditure, it is my opinion, again, that this requirement cannot operate to take away the mayor's "exclusive authority" to make purchases under A.C.A. § 14-58-303. The City Council does have the authority to determine the procedure for such purchases, A.C.A. § 14-48-303(b)(1), but, as stated previously, this authority cannot be exercised to obliterate the mayor's exclusive power under the statute. Again, however, it is unclear to what extent the city is obligated to find these purchases.
The third measure at issue is Resolution No. 93-5-12-93A, which deletes all funds contained in two line item numbers of the City budget. The items deleted are identified as "public relations/mayor's office" and "travel/training." It is my opinion that the enactment of this Resolution is within the Council's authority as long as the provisions of A.C.A. § 14-58-203 are complied with. This statute provides that the governing body may alter or revise the budget and unpledged funds appropriated by the governing body may be appropriated for another purpose, except that funds resulting from taxes levied for one purpose shall not be diverted to another, and appropriated funds may not be diverted to another purpose where any creditor of the city would be prejudiced thereby. As long as the latter two provisos are not implicated, it is my opinion that the council is within its authority.
The fourth measure at issue is Resolution No. 93-5-12-93C which designates William Spurlock (the City Comptroller) as "substitute signatory" for the "Revolving Loan Fund for sewer rehabilitation." I have found no general state statute requiring the mayor to be the signatory of city checks, nor has research disclosed any specific statute with reference to a "Revolving Loan Fund for sewer rehabilitation." The statutes in this area refer only to the "authorized disbursing officer." Seegenerally A.C.A. §§ 14-59-105(b)(5), and 14-237-106(b)(5) with regard to sewer funds. It is therefore my opinion that the City Council is within its authority in removing the mayor as the "authorized disbursing officer" for such checks.
The fifth measure at issue is Resolution No. 93-5-12-93B, which removes the Mayor as a signatory on any check issued by the City, and indicates that three other individuals shall be authorized signatories. As stated above, I find no general state statute which would require the mayor to be the city check signatory. It would therefore appear that the Council is within its authority in this regard, with one exception. Section 14-58-703 of the Arkansas Code does specifically require the mayor to be the signatory on checks issued from the "revolving cash fund" authorized at A.C.A. §§ 14-58-701 to -704. Other persons, therefore, may not be authorized signatories from this fund.
The sixth measure at issue is Resolution No. 8-10-93A which removes William Spurlock as signatory on city checks and designates James Allen as "alternate signatory." I cannot analyze the legality of this Resolution because the Resolution does not indicate the title of James Allen, or whether in fact he is even a city official. The discussion above, however, should be of assistance in analyzing the issue of proper city check signatories.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
Enclosure
[1] I have found no state statute addressing municipal "comptrollers." I assume that this is an office validly created under the general authority of A.C.A. § 14-53-502(b)(3) (1987).
[2] As will be discussed infra, there is no general requirement that the mayor be the city check signatory.